UNTIED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 5:22-CR-00049 (GWC) |
| | : | |
| v. | : | |
| | : | |
| NATHAN CARMAN | : | JANUARY 26, 2023 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATHAN CARMAN'S MOTION FOR PARTIAL DISCLOSURE OF GRAND JURY MINUTES**

"On December 20, 2013, Nathan Carman murdered his grandfather, John Chakalos, shooting him twice with the Sig Sauer while Chakalos slept in his Windsor, CT home." (Indictment at ¶ 10.) "As a central part of this scheme [to defraud], Nathan Carman murdered John Chakalos and Linda Carman." (*Id.* at ¶ 7.) The grand jury returned an indictment containing these definitive statements. It is reasonable to infer that the Government presented some testimonial and/or documentary information to the grand jury regarding Mr. Carman's purported involvement in the death of John Chakalos. What is not clear, however, is whether that information was as conclusory as the language in the Indictment suggests. If the Government summarily instructed the grand jury that Mr. Carman killed John Chakalos, this may have had an unfairly prejudicial effect as the grand jurors deliberated on Counts One through Six of the Indictment.

Despite extensive investigations by state and federal law enforcement, as well private investigators retained by family members, which have occurred from December 2013 through the present day, Mr. Carman has never been convicted or even charged criminally for the death of John Chakalos; nor has he been held responsible civilly. In fact, Mr. Carman has no prior criminal record whatsoever. Accordingly, it is necessary to review the grand jury minutes to ascertain whether Mr. Carman's constitutional rights were recognized and protected, or simply ignored and trampled upon. It appears that Counts On through Six of the Indictment are predicated solely upon

1

Mr. Carman's refusal to claim responsibility for John Chakalos's death. If the grand jury returned the Indictment containing these problematic statements based on misleading or inaccurate evidence, then Mr. Carman may have grounds to dismiss the Indictment. Therefore, the Court should grant Mr. Carman's Motion for Partial Disclosure of Grand Jury Minutes.

I. **BACKGROUND**

On May 2, 2022, a federal grand jury sitting in the District of Vermont returned an eight-count indictment (the "Indictment"), charging Mr. Carman with mail fraud in violation of 18 U.S.C. § 1341 (Counts One through Three), wire fraud in violation of 18 U.S.C. § 1343 (Counts Four through Six, and Count Eight), and murder in violation of 18 U.S.C. § 1111 (Count Seven). Mr. Carman was arraigned on May 11, 2022, during which the Court ordered Mr. Carman detained. (*See* Doc. No. 10.) Additionally, following a detention hearing on May 16, 2022, the Court issued an order of detention as to Mr. Carman. (*See* Doc. No. 19.) On July 6, 2022, Mr. Carman filed a motion to vacate the Order of Detention. (*See* Doc. No. 27.) On August 2, 2022, the Court held a hearing during which it denied Mr. Carman's motion. (*See* Doc. No. 35.)

In support of the mail and wire fraud charges brought in Counts One through Six, the Government asserts that, "Nathan Carman devised a scheme to defraud the Estate of John Chakalos, its executor, the Dynasty Trust, and its trustees, and to obtain money from the Dynasty Trust by materially false and fraudulent pretenses, representations, and promises." (Indictment at ¶ 7.) The Indictment provides further that, "[a]s a central part of this scheme, Nathan Carman murdered John Chakalos and Linda Carman." (*Id.*) Additionally, the Government maintains that Mr. Carman, "misrepresented his involvement in and responsibility for those deaths to law enforcement, to his family, to others who made inquiries about the deaths and their circumstances, and to others who challenged his cover-up or challenged his rights to his grandfather's assets." (*Id.*) The Indictment

provides further that Mr. Carman purchased a Sig Sauer rifle on November 11, 2013, and subsequently used "*the* Sig Sauer" to murder John Chakalos. (*Id.* at ¶¶ 9–10 (emphasis added).)

Despite stating in the Indictment that Mr. Carman murdered John Chakalos (*id.* at ¶¶ 7, 10), the Government has never charged Mr. Carman with the murder of John Chakalos in any state or federal jurisdiction. It follows that Mr. Carman has never been convicted of the murder of John Chakalos. The sole murder count in the Indictment alleges that Mr. Carman killed his mother, Linda Carman, in September 2016. (*See Id.* at ¶ 27.) In support of the murder charge, the Government alleges that, "[i]n September 2016, Nathan Carman arranged to go on a fishing trip on the *Chicken Pox* [his boat] with his mother, Linda Carman," and that he "planned to kill his mother on the trip." (*Id.* at ¶ 14.) The Government maintains that Mr. Carman did in fact kill Linda Carman on the fishing trip. (*See id.* at ¶ 18.) In addition, the Government asserts that Mr. Carman made false statements about the sinking of the *Chicken Pox* and what happened to Linda Carman. (*Id.* at ¶¶ 19–21.) During a hearing before this Court on August 2, 2022, the Government represented that, its "case centers primarily around the murder of Linda Carman." (Tr. Hr'g on Def.'s Mot. to Vac. Order of Detention (Doc. No. 39) at 9:7–10.)

## II. <u>LEGAL STANDARD</u>

Pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii), a "court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand jury matter: . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." In the Second Circuit, to justify such a request, a defendant must make a "showing of particularized need." *United States v. Sobotka*, 623 F.2d 764, 768 (2d Cir. 1980); *see also United States v. Schlegel*, 687 Fed. App'x 26, 30 (2d Cir. 2017) (summary order) (same). A party shows a particularized need by proving, "that the material they

3

ME1 44036513v.1

seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996) (quoting *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)); *see also United States v. Carneglia*, 675 Fed. App'x 84, 85–86 (2d Cir. 2017) (summary order) (same).

### III. ARGUMENT

Mr. Carman has a particularized need for the limited portion of the grand jury minutes he requests concerning the circumstances of John Chakalos's murder. The face of the Indictment makes clear that the Government presented the grand jury with "evidence" related to Mr. Carman's purported involvement in John Chakalos's death. It is not clear, however, that the grand jury had accurate and true information regarding the murder of John Chakalos. It is unknown whether the grand jury was provided with adequate information regarding Mr. Carman's suspected role in John Chakalos's death, as there has never been any arrest or any adjudication of guilt. If the curtain on these grand jury proceedings is lifted, Mr. Carman may have grounds to dismiss the Indictment because Mr. Carman's constitutional rights with respect to the uncharged crime may have been trampled or, at the very least, ignored.

#### A. What is Known from the Face of Indictment

From the face of the Indictment, it is known that the grand jury determined there existed probable cause, rising above a mere suspicion, that Mr. Carman engaged the criminal acts charged in Counts One through Eight. Specifically, the grand jury determined probable cause existed that Mr. Carman caused documents to be sent by U.S. mail to himself, which contained material misrepresentations in furtherance of his alleged fraudulent scheme (Indictment at ¶ 23); that Mr. Carman transmitted wire communications containing material misrepresentations in furtherance

of his alleged fraudulent scheme (*id.* at ¶ 25); that Mr. Carman killed Linda Carman (*id.* at ¶ 27); and, finally, that Mr. Carman "transmitted and caused to be transmitted" an additional wire communication in furtherance of his alleged fraudulent scheme (*id.* at ¶ 30). That is the sum total of what anyone can glean from the face of the Indictment.[1]

### B. What is Not Known

Although it is known that the grand jury ultimately returned a true bill finding probable cause as to Counts One through Eight, we do not know what the Government presented to the grand jury with respect to the uncharged conduct to allow the grand jury to reach its determinations. For example, the Indictment provides that Mr. Carman, "devised a scheme to defraud the Estate of John Chakalos, its executor, the Dynasty Trust, and its trustees, and to obtain money from the Dynasty Trust by materially false and fraudulent pretenses, representations, and promises." (Indictment at ¶ 7.) In addition, the Indictment asserts summarily that Mr. Carman, "murdered John Chakalos and Linda Carman." (*Id.*) Importantly, however, it is unknown whether the Government informed the grand jury before it returned a true bill that Mr. Carman has never been charged or convicted, or even held responsible civilly—in the District of Vermont or elsewhere— for the murder of John Chakalos. It is likewise unclear whether the grand jury was made aware that, aside from Mr. Carman, there were other individuals identified and investigated who possessed motive and opportunity to murder John Chakalos. These are important considerations. At the very least, the Government acknowledged previously to the Court that Mr. Carman was not charged with the murder of John Chakalos. (*See* Doc. No. 39 at 45:15–17 (Asst. U.S. Attorney stating that, "I can tell the Court that Mr. Carman was not ultimately charged in the State of Connecticut in connection with that offense [the murder of John Chakalos].")

---

[1] Mr. Carman has filed a Motion for Bill of Particulars seeking a bill of particulars regarding the alleged material misrepresentations that provide the bases for Counts One through Six and Count Eight. (Doc. No. 59.)

Moreover, the Indictment does not reflect whether the Government presented accurately to the grand jury the evidence regarding the firearm used in the murder of John Chakalos. The Indictment provides that Mr. Carman purchased a Sig Sauer rifle on November 11, 2013, and used "*the* Sig Sauer" to murder John Chakalos by shooting him twice in the head on December 20, 2013. (*Id.* at ¶ 10 (emphasis added).) However, the true and accurate fact is that the caliber of Mr. Carman's Sig Sauer was found to be merely consistent with the caliber of firearm used in the shooting of John Chakalos. (Windsor Police Dep't Report dated July 17, 2014.)[2] Further, it is not known whether the Government presented to the grand jury that investigators have never been able to confirm that the rifle used to shoot John Chakalos is the same as the one Mr. Carman allegedly purchased. The question remains whether the grand jury was aware that there is no telling whether Mr. Carman's rifle and the rifle used to shoot John Chakalos are the same.

**C. The Grand Jury Minutes are Necessary to Reconcile the Known with the Unknown**

In order to protect his constitutional rights and liberties, and as a matter of fairness, Mr. Carman needs access to the minutes from the grand jury proceedings that relate to the uncharged murder of John Chakalos. Accordingly, the Court should grant Mr. Carman's Motion.

It is well known that, that a principle function of the federal grand jury is to decide whether to return an indictment charging federal felony violations. Indeed, to return a true bill, the grand jury must find that there exists the low threshold of probable cause that the defendant committed the criminal conduct alleged. *See United States v. Motte*, 251 F. Supp. 601, 603 (S.D.N.Y. 1966); *see also United States v. Gilchrist*, 347 F.2d 715 (2d Cir. 1965). "The grand jury has the equally important duty of protecting persons against unfounded or unsupported charges and, absent a

---

[2] A true and accurate redacted copy of the Windsor Police Report dated July 14, 2014 is attached hereto as **<u>Exhibit A</u>**. An unredacted copy can be made available to the Court upon request.

finding of probable cause, it may not file an indictment." *United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979) (citing *Branzburg v. Hayes*, 408 U.S. 665, 686–87 (1972)).

Based on what was is represented on the face of the Indictment, Mr. Carman may have grounds to file a motion to dismiss the Indictment depending upon what occurred before the grand jury prior to it returning a true bill. The Indictment matter-of-factly provides that Mr. Carman murdered John Chakalos. The murder of John Chakalos is uncharged and unadjudicated, yet it provides the sole bases for the first six counts of the eight-count Indictment. It is unknown what exactly the Government presented to the grand jury regarding Mr. Carman's involvement in John Chakalos's murder. It is time to lift the veil of secrecy as to these proceedings. Was the Government forthcoming with the grand jury that Mr. Carman has never been convicted, let alone charged, for John Chakalos's death? Did the Government inform the grand jury that there were other suspects who, just like Mr. Carman, were never charged or convicted for the murder of John Chakalos?

Further, at the detention hearing, the Government declined to "spend significant time going further to rebut the claims made by the defendant with regard to the murder of John Chakalos," despite Mr. Carman "lean[ing] heavily" on the lack of weight regarding such evidence. (*Id.* at 9:7–8.) This begs the question as to whether the Government took the same approach when seeking the Indictment before the grand jury. Were there any questions from the grand jury about why the Government sought to charge Mr. Carman only with Linda Carman's murder? If the grand jury posed such questions, did the Government address the murder of John Chakalos to the grand jury's satisfaction? It is difficult, if not impossible, to know the answer without reviewing the grand jury minutes, as a murder count for the death of John Chakalos was not an enumerated

7

count that the grand jury was being asked to consider. Again, the Government has stated in open court that, its "case centers primarily around the murder of Linda Carman." (*Id.* at 9:7–10.)

A fundamental tenet of our criminal justice system provides that individuals charged with committing a crime are presumed innocent until there is some adjudication of guilt. Despite the recitation in the Indictment of the uncharged criminal offense that he murdered John Chakalos, Mr. Carman is presumed innocent. The Indictment's conclusory statements to the contrary deprive Mr. Carman of his constitutional rights and summarily convict him of John Chakalos's murder. Again, the grand jury was not asked to make a probable cause finding regarding John Chakalos's murder. As this case proceeds to trial, the Government will not be required to prove beyond a reasonable doubt that Mr. Carman murdered John Chakalos, as that remains uncharged conduct. Further, a petit jury will not be required to hold the Government to that lofty burden for the uncharged conduct, which remains the sole basis for Counts One through Six. However, Mr. Carman will be forced to prepare a defense to two murders rather than one.

Mr. Carman is also concerned as to evidence related to the firearm used in the shooting of John Chakalos. Was the grand jury apprised that the firearm Mr. Carman allegedly purchased was the same gun used to shoot John Chakalos as the Indictment asserts? If so, then it is highly probable that inaccurate and/or incomplete information may have improperly influenced the grand jury's decision to return a true bill as to all eight counts. The Government has known that, at all relevant times, investigators have been unable to confirm whether Mr. Carman's rifle was the same firearm used in the murder of John Chakalos. *See Ciambrone*, 601 F.2d at 623 (noting that "the prosecutor's right to exercise some discretion and selectivity in the presentation of evidence to a grand jury does not entitle him to mislead it or to engage in fundamentally unfair tactics before it.").

If Mr. Carman is unable to review the grand jury minutes regarding the death of John Chakalos, he will be significantly prejudiced in this criminal case. Instead of being required to defend one murder charge, he will be required to defend two. However, only one of the murders is charged in this Indictment yet, ironically, Counts On through Six arise solely from the uncharged murder of John Chakalos. (*See* Doc. No. 39 at 7:20–23 (Asst. U.S. Attorney noting that Mr. Carman "is alleged to have committed two murders. . . . As a result, the defendant is charged with *one* of the most serious offenses in our criminal code) (emphasis added).) Mr. Carman enjoys a presumption of innocence with respect to the murder of John Chakalos. As the Indictment is fashioned, the Government is attempting to deprive him of that right by attempting to convict him of fraud based on summary representations of guilt as to the uncharged and unadjudicated murder. Mr. Carman's need for disclosure is far greater than continued secrecy of the grand jury proceedings in this capital case. Courts have stated that the need for secrecy decreases at the conclusion of the grand jury proceedings. *See Dennis v. United States*, 384 U.S. 855, 870 (1966); *Sobotka*, 623 F.2d at 767 (2d Cir. 1980). Regardless, the need to protect Mr. Carman's constitutional rights in this capital case far outweigh the need for secrecy. Moreover, Mr. Carman is seeking only the grand jury minutes relating to the uncharged murder of John Chakalos. Therefore, his request is narrowly tailored and defined.

Mr. Carman acknowledges that the Government is not required to present exculpatory evidence to the grand jury. *Ciambrone*, 601 F.2d at 622 (citations omitted). However, the Second Circuit has stated that, "where a prosecutor is aware of any substantial evidence negating guilt he should, in the interest of justice, make it known to the grand jury, at least where it might reasonably be expected to lead the jury not to indict." *Id.* at 623 (citing ABA Project on Standards for Criminal Justice, The Prosecution Function, § 3.6, pp. 90–91). Further, the grand jury does not belong to

9

ME1 44036513v.1

the prosecutor. To the contrary, the responsibilities of the grand jury "include both the determination of whether there is probable cause to believe a crime has been committed and the protection of citizens from unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343 (1974) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 686–87 (1972)). Indeed, all prosecutors must ensure both that the guilty shall not escape, nor the innocent suffer. Prosecutors must do nothing to inflame or otherwise improperly influence grand jurors. Nonetheless, Mr. Carman's need for the grand jury minutes does not concern whether the Government presented exculpatory evidence. Instead, Mr. Carman seeks to determine whether the Government presented complete and accurate information to the grand jury. An indictment premised upon anything less would be constitutionally problematic and unfair. Given the conclusory assertions on the face of Indictment, it is apparent that the grand jury may not have had a complete and accurate evidentiary picture before deliberating and returning a true bill. Accordingly, Mr. Carman has demonstrated a particularized need for a portion of the grand jury minutes to avoid a possible injustice in this capital case.

## IV. CONCLUSION

Mr. Carman has shown that grounds may exist to dismiss the Indictment based on conduct that occurred before the grand jury. It is unclear if the Government informed the grand jury that Mr. Carman has never been convicted criminally or held responsible civilly for the murder of John Chakalos. Moreover, the Government presented a proposed indictment to the grand jury asserting that Mr. Carman purchased a firearm and used that same firearm to shoot his grandfather. However, based on the discovery the Government provided to the defense, it appears investigators concluded only that the firearms were consistent in caliber. There has never been a determination that the Sig Sauer that Mr. Carman allegedly purchased was the same as the gun used in the murder of

10

ME1 44036513v.1

John Chakalos. Disclosure of portions of the grand jury minutes are necessary and critical to ensure that Mr. Carman's constitutional rights are protected, and to avoid any unfair prejudice to Mr. Carman in this capital case. Mr. Carman has demonstrated a need to review a limited portion of the grand jury minutes. Accordingly, the Court should grant Mr. Carman's Motion for Partial Disclosure of Grand Jury Minutes.

Dated: January 26, 2023
       Hartford, Connecticut

Respectfully submitted,

THE DEFENDANT
NATHAN CARMAN


By: /s/ *David X. Sullivan*
    David X. Sullivan, Esq. (*Pro Hac Vice*)
    dsullivan@mccarter.com
    McCARTER & ENGLISH, LLP
    CityPlace I, 36th Floor
    185 Asylum Street
    Hartford, CT 06103
    Phone: (860) 275-6700
    Fax: (860) 724-3397

/s/ *Martin J. Minnella*
Martin J. Minnella, Esq. (*Pro Hac Vice*)
pcrean@mtelawfirm.com
MINNELLA, TRAMUTA, & EDWARDS, LLC
40 Middlebury Road
Middlebury, CT 06762
Phone: (203) 573-1411
Fax: (203) 757-9313

/s/ *Robert W. Katims*
Robert W. Katims, Esq.
rkatims@hoffcurtis.com
HOFF CURTIS
60 Main Street
Burlington, VT 05401
Phone: (802) 864-6400

**CERTIFICATION**

      I hereby certify that on this date a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

      /s/ *David X. Sullivan*
      David X. Sullivan (*Pro Hac Vice*)

ME1 44036513v.1