UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Docket No. 5:22-CR-49 |
| ) | |
| NATHAN CARMAN, ) | |
| Defendant. ) | |

GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION FOR A BILL OF PARTICULARS

Defendant Nathan Carman has moved for a bill of particulars aimed primarily at identifying "the material misrepresentation *contained in*" [emphasis added] each count of wire and mail fraud alleged in the indictment. The Court should deny Carman's motion because it is predicated on a misunderstanding of the relevant law, and the Court should not order a bill of particulars pertaining to a nonexistent element. Even if Carman's motion is construed more broadly, the plain language of the indictment, in conjunction with the government's generous provision of discovery and willingness to make other informal disclosures, negates the need for a bill of particulars. As a result, Carman's motion is an impermissible attempt to obtain a detailed preview of the government's evidence and to limit the contours of the government's case even before a trial date has been set.

Carman additionally seeks clarification regarding the date of the offense in Count Eight, which is alleged to have occurred "on or about June 10, 2017." Finally, Carman asks for clarification regarding conjunctive charging language in Count Eight. Carman's motion should be denied because the use of "on or about" in connection with a specific date – a single day – provides adequate notice of the date on which the government alleges Count Eight was committed. Furthermore, the government's use of the word "and" in Count Eight is a common and permissible way to charge multiple potential means of committing the offense alleged.

1

I.        The Indictment

The federal grand jury charged Carman with three different crimes. First, Counts One through Six charge Carman with a double-murder fraud scheme. Carman is charged in Count Seven with the murder of his mother – a federal crime because it occurred within special maritime and territorial jurisdiction of the United States.  Count Eight alleges a wire fraud scheme based on Carman's lies about his actions in connection with an insurance claim for the boat he owned and operated when he killed his mother. Carman's motion for a bill of particulars focuses solely on the mailings and wires – the bases for federal jurisdiction – in Counts One through Six and Count Eight. Counts One through Three allege interstate mailings as bases for separate crimes in connection with the double-murder fraud scheme, while Counts Four through Six allege interstate wires as bases for separate crimes in connection with that same double-murder fraud scheme.

The fraud scheme outlined in Counts One through Six charges Carman with committing two murders – the murder of his grandfather and the murder of his mother – to obtain access to millions of dollars in a trust fund, and hiding his responsibility for those murders. Put simply, the charged scheme involves money, murder, and misrepresentations. The indictment alleges that Carman planned the murders as well as false cover stories to conceal the truth about his conduct. In so doing, he sought to deceive the executor of John Chakalos's estate and the trustees of the Chakalos Family Dynasty Trust, who had authority over the distribution of the money Carman hoped to receive. According to the charges, Carman's scheme to obtain money depended on his ability to conceal his responsibility for the killings. It was obviously foreseeable, and Carman understood, that law enforcement would investigate John Chakalos's murder and Linda Carman's "disappearance."  Carman also knew that his family would ask questions about his

involvement in those events and might even suspect him. Carman additionally planned to file an insurance claim for his boat – based on false statements – in order to further the murder scheme.

The indictment outlines Carman's cover stories and the specific ways he lied to law enforcement. With regard to the murder of his grandfather, Carman denied his involvement in the murder, misrepresented his whereabouts, and falsely denied purchasing the firearm he used to kill Chakalos. With regard to the murder of his mother, Carman lied to the Coast Guard and law enforcement about what happened to his mother and what occurred on his boat – the Chicken Pox – between September 18 and September 25, 2016. Carman also filed a claim with his insurance company based on those false narratives, which he maintained during the insurance litigation. Carman's aunt – the executor of John Chakalos's estate – suspected Carman's involvement in both murders and sought to prevent him from benefiting from the funds in the estate. The indictment specifically alleges that Carman executed his scheme by maintaining these various false statements in that litigation. Thus, the indictment clearly describes the nature and scope of Carman's scheme as well as the key deceits on which that scheme was based.

Count Eight alleges a narrower scheme to defraud a different victim of different property. As noted above, Carman's false insurance claim was part of his murder fraud scheme. The indictment, however, includes a charge alleging that Carman defrauded the insurance companies involved in his insurance claim by misrepresenting what happened onboard the Chicken Pox.

II.     Early Discovery

Shortly after Carman's arrest in May of 2022, the government began producing comprehensive discovery to his counsel – at the time, the Office of the Federal Public Defender. Much of this discovery was presumably available to Carman in connection with prior civil litigation. The government provided the discovery electronically, allowing Carman to easily

search the material for particular data or documents.  The government also provided Carman with detailed indexes of the discovery material, giving him an additional means of identifying specific documents.  Additionally, in late May of 2022, the government met with Carman's counsel for a Rule 16.1 discovery conference.  The government provided Carman's counsel with an overview of the discovery in the case, discussed the trajectory of the case more broadly, and answered questions from Carman's counsel.

In October of 2022, Carman retained new counsel.  The government re-produced discovery to Carman's new counsel – again in a searchable, electronic format – and helped Carman's new counsel address technical difficulties.  In October of 2022, the government offered to meet with Carman's new counsel for a second Rule 16.1 discovery conference. On several subsequent occasions, as recently as January of 2023, the government reiterated its willingness to meet with Carman's new counsel to discuss the case, but Carman's new counsel has not pursued such meetings.  Relatedly, Carman's counsel did not confer with the government before filing his motion for a bill of particulars, as is required by Local Rule 7(a)(7).

III.    <u>Carman's Motion</u>

Carman's motion makes three requests.  First, Carman asks the Court to order the government to identify "the material misrepresentation *contained in*" [emphasis added] the wires and mailings which are the basis for Counts One through Six and Count Eight of the Indictment. Second, Carman asks the Court to order the government to identify the specific date of the offense in Count Eight of the indictment, which charges Carman with wire fraud "[o]n or about June 10, 2017."  Finally, with regard to the allegation in Count Eight that Carman "transmitted and caused to be transmitted" an email which is the basis of the wire fraud allegation in that

4

Count, Carman asks the Court to order the government to specify which of those two means it alleges Carman committed the offense.

IV.     Relevant Law

    a. *Mail and Wire Fraud*

The elements of mail and wire fraud are well established. "The elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires."  United States v. Autuori, 212 F.3d 105, 115 (2d Cir. 2000).  In the language of Judge Sand's jury instructions:

> In order to sustain this charge, the government must prove each of the following elements beyond a reasonable doubt:
>
> First, that the was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the indictment;
>
> Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and
>
> Third, that in the execution of that scheme, the defendant used or caused the use of the mails (or a private or commercial interstate carrier or interstate wire) as specified in the indictment.

2 Sand et al., Modern Federal Jury Instructions Inst. 44-3 (2022).

Contrary to Carman's supposition, the third element – the basis for federal jurisdiction – does not require either that the mailing or wire contain a false statement or that the defendant sent the mailing or wire.  Judge Sand's specific instruction for the third element has been regularly accepted as accurate in this District and within the Second Circuit. That instruction includes the following:

> The use of the wires [or mailing] need not itself be a fraudulent representation. It must, however, further or assist in the carrying out of the scheme to defraud.
>
> It is not necessary for the defendant to be directly or personally involved in the wire communication [or mailing], as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.
>
> In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires [or mailing] to be used by others. This does not mean that the defendant must specifically have authorized others to make the call [or send a document]. When one does an act with knowledge that the use of the wires [or mailing] will follow in the ordinary course of business or where such use of the wires can be reasonably foreseen, even though not actually intended, then he causes the wires to be used.

2 Sand et al., Modern Federal Jury Instructions Inst. 44-6 (2022).

The Supreme Court and the Second Circuit have held that the mailing need not have a critical role in furthering the scheme. Pereira v. United States, 347 U.S. 1, 8 (1954). "It is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'" Schmuck v. United States, 489 U.S. 705, 710-11 (1989); accord United States v. Tocco, 135 F.3d 116, 124 (2d Cir. 1998). "Nor need the wire communication itself have been false; even 'innocent' transmissions, i.e., 'ones that contain no false information—may supply the [transmission] element.'" United States v. Reifler, 446 F.3d 65, 95 (2d Cir. 2006) (quoting Schmuck, 489 U.S. at 715). Moreover, a wire fraud indictment need not contain every detail of the alleged scheme to defraud. See United States v. Berger, 224 F.3d 107, 117 (2d Cir. 2000).

6

b. *Bills of Particulars*

"A bill of particulars is required 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (quoting United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990)). "The proper scope and function of a bill of particulars is to furnish facts, supplemental to those contained in the indictment, necessary to apprise the defendants of the charges against them with sufficient precision so as to enable them to prepare a defense, to avoid unfair surprise at trial, and to preclude a second prosecution for the same offenses." United States v. Binday, 908 F. Supp. 2d 485, 497 (S.D.N.Y. 2012). "[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." Walsh, 194 F.3d at 47. An indictment that describes the nature of charges, coupled with insightful discovery and other guidance from the government, is sufficient to obviate the need for a bill of particulars. See United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004).

Defendants are not entitled to a bill of particulars to preview the government's case. "A bill of particulars is not a general investigatory tool, a discovery device, or a means to compel the Government to disclose evidence or witnesses to be offered prior to trial." United States v. Nunez, 2001 WL 91708, at *5 (S.D.N.Y. Feb. 1, 2001). Stated differently, it is not a means for a defendant to seek information "in the nature of the 'wheres, whens and with with whoms'"of the government's case. United States v. Mitlof, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001). Thus, the government "may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the Defendant committed the crime charged, or a preview of the Government's evidence or legal theories." Id.

V.     Argument

      a. *Carman's request for the material misrepresentations "contained in" mailings and wires*

Carman asks the Court to order the government to produce a bill of particulars detailing the materials misrepresentations "contained in" various mailings and wires. Carman's motion for a bill of particulars misses the mark because it relies on a mistaken premise. As noted above, the mailings or wires charged in each count need not contain a material misrepresentation. Instead, the mailing or wire need only further the scheme to defraud. To be sure, the wires sent by Carman alleged in Counts Four through Six and Count Eight do contain materially false statements but, as described below, the government should not be required to specify a particular theory of its case in a bill of particulars. While the indictment alleges a scheme that includes materially false statements by Carman, the government has no burden to prove any particular false statements in the alleged mailings and wires. Simply put, the Court should deny Carman's request for a bill of particulars detailing information that the government is not required to prove.

To the extent the Court construes Carman's motion as a request for information about all of the material misrepresentations involved in his double-murder fraud scheme, it should nonetheless deny the motion because a bill of particulars is not an appropriate vehicle to force the government to describe every false statement in the case. There is little mystery about the allegations in the indictment. The indictment alleges that Carman concocted cover stories to hide his involvement in the murders. Carman generally maintained his cover stories throughout the scheme, and these cover stories are outlined in the indictment. The defense is aware of all of Carman's various statements – to police, to family, to the insurance company, and in litigation – from the detailed and indexed discovery.

Mailings and wires to and from Carman were an obvious and important part of the civil discovery process in which Carman participated – often without an attorney – and they furthered his scheme through false statements. The indictment alleges specific mailings to Carman and specific wires sent by Carman. The government has clarified the exact documents that are charged as wires and mailings for each count. Moreover, it is obvious how these mailings and wires are connected to the charged scheme.

Count One alleges a mailing of the Executor's Third Set of Interrogatories, which directed Carman to answer various questions, such as "Please list all steps which have been taken to identify and preserve any electronically-stored information…in connection with the murder of your grandfather or the disappearance of your mother." The indictment specifically alleges that as part of the scheme Carman discarded or hid electronic information, and Carman is of course aware of his own sworn answers to these interrogatories. Count Two charges a UPS shipment of discovery to Carman from the Executor containing material about the Windsor Police Investigation, including Carman's false statements in police interviews, about which he would be asked during depositions. Carman has received and is aware of the contents of those video recorded interviews – containing his own statements – and the indictment specifically alleges that Carman lied in those interviews. Count Three similarly concerns a shipment from counsel for the Executor to Carman containing exhibits relating to the Executor's request for admission, another critical aspect of discovery. The indictment tracks, in part, the Executor's probate litigation, and the petitioner's second requests for admission contain a variety of questions directly connected to the charged scheme. There is no mystery about the similarities between the probate allegations and the criminal allegations, and there is no confusion about the questions Carman was asked and the answers he provided under oath.

Counts Four through Six allege emails sent by Carman to counsel for the Executor containing his answers to interrogatories and requests for admission in which Carman maintained his false narratives about both murders.  Again, there can be no confusion about the documents and statements at issue.  Count Four relates to Carman's answers to the first set of interrogatories, which include Carman's answer regarding his whereabouts on the night of John Chakalos's murder.  Count Five relates to a wire in which Carman answers the interrogatories propounded by mail as charged in Count One, including his answer about electronic information.  Count Six involves Carman's sworn answers to petitioner's first requests for admission which include information about firearms, computers, and GPS units – all of which are mentioned in the indictment.

Count Eight relates to an email from Carman to his counsel providing discovery in which he maintains his false narrative about the voyage of the Chicken Pox – a false narrative he also provided to the insurance company at the initiation of his fraudulent insurance claim.  As with the double-murder fraud scheme mailings and wires, the government has identified the specific wire at issue within the discovery materials it has provided.  The defense cannot be confused about the narrative included with the wire or its connection to the charged scheme to defraud the insurance company.  Count Eight specifically alleges that Carman misrepresented what happened on his "fishing trip" with Linda Carman.

The government has provided more than sufficient information in the indictment, the scores of interview reports and testimony, the searchable discovery – including the relevant mailings and wires – and the offer of informal discussions about the case to allow Carman and his counsel to prepare a defense and to avoid unfair surprise at trial.  Should the Court view Carman's motion as seeking a sweeping bill of particulars, it would amount to an impermissible

attempt to preview and confine the evidence in the government's case. Despite the government's continuing efforts to preview its evidence and the theory of its case, Carman seeks more in an effort to restrict the government to the presentation of limited evidence at trial, which at this point has not even been scheduled. To the extent that Carman is seeking the identification of each particular detail about how he allegedly executed the scheme to defraud — "all false statements" — the relevant law makes clear that Carman is not entitled to this sort of outline of the government's case well in advance of trial.

The notice here differs significantly from the few cases where the Second Circuit supported a request for a bill of particulars. For example, in United States v. Bortnovsky, 820 F.2d 572 (2d Cir. 1987), the Second Circuit reversed a conviction based on a denial of a bill of particulars where the defense received voluminous paper discovery that had not been indexed and could not be digitally searched. Moreover, though the case involved allegedly false insurance claims, the government had not told the defense which claims were allegedly false. Further, one of the defendant's attorneys had only days to prepare for the complex trial. The court of appeals observed that "the relevance of the key events was shrouded in mystery at the commencement of and throughout trial." Id. at 575. The Bortnovsky court appeared to be remedying what it saw as a rush to judgment. Likewise, in United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988), the court of appeals reversed a conviction where the government failed to identify the victims of the extortions alleged in the RICO indictment and waited until jury selection to provide witness reports revealing those victims. The Second Circuit made clear that detailed discovery might obviate the need for a bill of particulars, id. at 1155, but in that case it came far too late to help.

Carman has been given a much clearer picture of the government's case. The indictment is more specific, the discovery is more organized, and the defendants have adequate time to prepare. Most importantly, the government has provided the defense with the nature of the deceits in the wire fraud scheme as well the key documents containing those frauds and fraudulent statements. The relevant case law seeks to strike a balance between the government's discovery obligations and the need for a bill of particulars. Courts have granted specific requests, particularly when the government provided voluminous discovery without directing the defendant's attention to the most relevant material. See United States v. Nachamie, 91 F. Supp. 2d 565 (S.D.N.Y. 2000). That is not the case here.

Courts in this circuit have denied sweeping requests for all aspects of the alleged scheme to defraud like the one sought here. In United States v. Connolly, 2017 WL 2537808 (S.D.N.Y. May 24, 2017), Judge McMahon declined to order the government to provide this precise sort of request for "any false statements that the Government may rely on in the case" in light of the specificity of the indictment and the government's early discovery. And in Nachamie, Judge Scheindlin, though granting more narrow requests, denied the types of sweeping requests Carman makes here because the requests sought "impermissible evidentiary detail" or "require[d] the government to lay out its proof three months before trial." 91 F. Supp. 2d at 564-65; see also United States v. Crisona, 271 F. Supp. 150, 156 (S.D.N.Y. 1967) (declining to order bill of particulars with regard to "the evidentiary details as to how the scheme was actually carried out, such as the date and place of each false representation actually made, persons by and to whom it was made, and similar details").

Indeed, in United States v. Quiros, 5:19-CR-76, Doc. 163, (D. Vt. July 20, 2020), this Court declined to order a bill of particulars in similar circumstances. There, the defense

12

requested that the government "identify all false statements underlying the wire fraud and the wire fraud conspiracy." As the Court is aware, the Quiros litigation involved a much more complex fraud scheme and a far larger volume of discovery. Here, as there, the government has provided the defense with the nature of the deceits in the wire fraud scheme and the key documents containing those frauds and fraudulent statements. The Court should follow its own precedent and deny any request to identify all false statements, where the indictment leaves "little room for surprise or uncertainty about the factual basis for each count." Doc. 163 at *4.

      b. *Carman's request for "the specific date" of an offense alleged to have occurred "on or about June 10, 2017"*

Carman claims that the description of the offense in Count Eight – alleged to have occurred "on or about June 10, 2017" – is insufficiently particular to allow him to adequately prepare for trial. He asserts that he "needs to know the specific date on which he allegedly 'transmitted and caused to be transmitted' the email attaching the 'narrative.'" In support of his argument, the sole authority cited by Carman is United States v. Jackson, 2022 WL 17076193 (D. Vt. 2022). In that case, the indictment alleged that an offense had been committed "[b]etween in or about the summer of 2020 and on or about November 23, 2021." The Court granted the defendant's motion for a bill of particulars and ordered the government "to narrow the date range to an approximate fifteen-day period."

Here, Count Eight of the indictment alleges that the offense occurred "on or about" a single day. This narrow pleading is even more specific than the fifteen-day period deemed sufficient in Jackson. Notably, the government has identified the particular wire within the discovery provided by the government. In any event, all that the law requires is a substantial similarity between the dates alleged in the indictment and the date established by testimony or

exhibits. United States v. Brown, 79 F.2d 321 (2d Cir. 1955). The indictment is therefore sufficient and no bill of particulars is required.

        c. *Carman's request for clarification of "transmitted and caused to be transmitted"*

"Where there are several ways to violate a criminal statute...federal pleading requires...that an indictment charge [be] in the conjunctive to inform the accused fully of the charges. A conviction under such an indictment will be sustained if the evidence indicates that the statute was violated in any of the ways charged." United States v. McDonough, 56 F.3d 381, 390 (2d Cir.1995) (internal quotation marks, citations, and alterations omitted). 18 U.S.C. § 1343 provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, *transmits or causes to be transmitted* by means of wire...communication in interstate...commerce, any...signals...or sounds for the purpose of executing such scheme or artifice, shall be fined...or imprisoned… *(emphasis added)*

The use of conjunctive pleading language is permissible – if not required – for purposes of an indictment alleging a violation of the wire fraud statute. See, e.g., United States v. Wiener, 127 F. Supp. 2d 645 (M.D. Pa. 2001). Accordingly, a bill of particulars is not necessary.

VI.    Conclusion

        For the reasons set forth above, the government respectfully requests that the Court deny Carman's motion for a bill of particulars.

Dated at Burlington, in the District of Vermont, this 3rd day of February, 2022.

                              Respectfully submitted,

                              UNITED STATES OF AMERICA

                              NIKOLAS P. KEREST
                              United States Attorney

By:    /s/ *Nathanael T. Burris*
        NATHANAEL T. BURRIS
        PAUL J. VAN DE GRAAF
        Assistant United States Attorneys
        P.O. Box 570
        Burlington, VT 05402-0570
        (802) 951-6725