UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 5:22-cr-49-1 |
| ) | |
| NATHAN CARMAN, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON FIRST MOTION FOR BILL OF PARTICULARS AND MOTION FOR PARTIAL DISCLOSURE OF GRAND JURY MINUTES**
**(Docs. 59, 62)**

Defendant Nathan Carman has filed a First Motion for a Bill of Particulars as to Counts One through Six and Count Eight (Doc. 59) and a Motion for Partial Disclosure of Grand Jury Minutes (Doc. 62). The motions have been fully briefed and the court held a hearing on February 7, 2023. The court has also considered Defendant's supplemental memorandum filed on February 10, 2023. (Doc. 71.)

**I.    Motion for Bill of Particulars (Doc. 59)**

Rule 7(f) of the Federal Rules of Criminal Procedure authorizes the court to order the government to file a bill of particulars. "The motion for a bill of particulars requests that the prosecution be directed to furnish further information (i.e. "particulars") concerning the offense charged in the information or indictment." LaFave and Israel, *Criminal Procedure* § 19.4(a) (2022). The purposes of the bill of particulars are to "[enable a] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) (per curiam).

Case 5:22-cr-00049-gwc   Document 72   Filed 02/16/23   Page 2 of 7

The rule contains no specific standard; the basis for such an order is left to development through decisional law. Instances in which the Second Circuit has required a bill of particulars include cases in which "the relevance of key events was shrouded in mystery at the commencement of and throughout the trial," *id.* at 575, or in which the indictment failed to identify the predicate acts providing the basis for a RICO prosecution. *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988). Courts exercising their discretion under Rule 7(f) examine "the totality of the information available to the defendant—through the indictment, affirmations, and general pre-trial discovery—and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted." *United States v. Jackson*, No. 2:21-cr-00113, 2022 WL 17076193, at *4 (D. Vt. Nov. 18, 2022) (quoting *United States v. Rogas*, 547 F. Supp. 3d 357, 365 (S.D.N.Y. 2021)).

The indictment in this case states with reasonable specificity the alleged false statements supporting the mail fraud claims in Counts 1–3. It alleges that Mr. Carman devised a scheme to defraud the estate of his grandfather John Chakalos and a trust created by Mr. Chakalos by killing him on December 20, 2013, and then by lying about his (Mr. Carman's) actions. (Doc. 1 ¶¶ 7–13.) The indictment describes $550,000 Mr. Carman received from two bank accounts as a result of his grandfather's death. (*Id.* ¶ 13.) The indictment alleges that following the murder, Mr. Carman made false statements to law enforcement investigators. (*Id.* ¶ 12.) It further alleges that Mr. Carman murdered his mother in the course of an offshore fishing trip in 2016. (*Id.* ¶¶ 14–18.) It alleges that Mr. Carman made false statements to the Coast Guard and law enforcement about his mother's disappearance and the loss of his fishing boat. (*Id.* ¶ 19.) Finally, it alleges that Mr. Carman made false statements to his marine insurer in an effort to obtain coverage for the lost boat. (*Id.* ¶ 21.)

2

Defense counsel initially sought a bill of particulars on all claims of mail or wire fraud (Counts 1–3, 4–6 and 8). In the reply memorandum, defense counsel advise that they are satisfied with the information they have received regarding Counts 4–6 and 8 and no longer seek a bill of particulars regarding these counts. (Doc. 67 at 3.) They now seek "to know the material misrepresentations that the Government alleges provide the grounds for the frauds charged in the Indictment" concerning Counts 1-3 only. (*Id.* at 1.)

At the hearing the Government responded that the false statements occurred as Defendant formed a "cover story" to conceal his killing of his grandfather and his mother in order to increase his inheritance. According to the Government, the statements are largely in writing or recorded. They come from two sources: interviews by law enforcement and pleadings and deposition transcripts from the New Hampshire probate proceeding in which family members of Mr. Chakalos accused Mr. Carman of shooting his grandfather and the marine insurance claim and lawsuit related to the sinking of the fishing boat. In addition, there are some oral statements made to witnesses by Mr. Carman. These statements all deny any role by Mr. Carman in the deaths of his two close relatives.

The indictment describes some of these statements. Because the motion for a bill of particulars has been narrowed to Counts 1–3, all concerning the death of Mr. Chakalos, the court omits discussion of false statements concerning the loss at sea of the fishing boat and the disappearance of Ms. Carman in 2016. (*See* Doc. 67 at 3 (withdrawing the request for a bill of particulars concerning the sinking of the *Chicken Pox* and the insurance dispute).)

Paragraph 12 alleges that Mr. Carman provided false information to law enforcement investigating Mr. Chakalos's shooting between December 20, 2013 and January 2014. In particular, the alleged false statements included his "whereabouts between approximately

3

3:00 a.m. on December 20, 2013 . . . and approximately 4:00 a.m., when he arrived at the location where he planned to meet his mother to take a charter fishing trip." (Doc. 1 ¶ 12.)

At the hearing on the motion, counsel for the Government confirmed that it is these statements to police investigators that constitute the false statement element of the fraud charges arising out of the death of John Chakalos. These charges appear as Counts 1–3. The Government also confirmed that as required by Fed. R. Crim. P. 16(a)(1) that it has provided the defense with copies of all written or recorded statements by Mr. Carman to law enforcement.

The court concludes that the indictment identifies the false statements on which the Government relies with sufficient specificity to defeat the defendant's request for a further bill of particulars. The fraudulent statements at issue in Counts 1–3 concern Mr. Carman's denial of any role in his grandfather's death. That is a discrete subject area which has been fully disclosed through the indictment and subsequent discovery.

This case differs from cases such as *Davidoff*, *Bortnovsky*, and *Jackson*. This is not a RICO case where the prosecution has failed to identify the victims of the extortionate schemes. *Cf. Davidoff*, 845 F.2d at 1154. Nor is Mr. Carman's defense hindered as was the defense in *Bortnovsky* by the failure to reveal crucial information or the relevance of key events. *Cf. Bortnovsky*, 820 F.2d at 574–75.[1] *Jackson* is similarly distinguishable; the indictment in that firearms case lacked sufficient information "regarding the dates of the alleged brandishings, the

---

[1] The court also rejects Mr. Carman's suggestion that the quantity of information that the Government has provided to the defense "serves only to make the nature of the fraud charges less apparent to Mr. Carman." (Doc. 59-1 at 10.) The prosecution in *Bortnovsky* "did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged." *Bortnovsky*, 820 F.2d at 575. Here, the Government has produced extensive documentation, but it has not disguised the alleged misrepresentations—i.e., Mr. Carman's denials of his involvement in his grandfather's death.

4

location, the individuals present, or the firearm involved." *Jackson*, 2022 WL 17076193, at *5. Instead, the Government has identified a single consistent "cover story" through which Mr. Carman has denied any role in either death. The allegations in the indictment and the disclosure of written and recorded statements as well as the Government's representations at the hearing place the defendant on reasonable notice of the nature and content of the alleged false statements.

For this reason, the court DENIES the motion for a bill of particulars (Doc. 59).

**II.    Release of Grand Jury Minutes (Doc. 62)**

Defendant seeks the release of transcripts of grand jury testimony in order to determine whether the "Government summarily instructed the grand jury that Mr. Carman killed John Chakalos, [thereby creating] an unfairly prejudicial effect as the grand jurors deliberated on Counts One through Six of the Indictment." (Doc. 62-1 at 1.) The Government responds that release of grand jury materials is strictly limited and does not extend to a review of the grand jury's probable cause determination.

Rules 6(e)(3)(E)(i) and (ii) of the Federal Rules of Criminal Procedure authorize the court to permit disclosure of grand jury transcripts "preliminarily to or in connection with a judicial proceeding" or "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." These provisions afford a procedure for disclosure. But the Supreme Court has limited the occasions on which grand jury testimony may be used to seek dismissal of the indictment. *See United States v. Sobotka*, 623 F.2d 764, 768 (2d Cir. 1980) (recognizing Supreme Court decisions permitting disclosure of grand jury matters only upon a showing of "particularized need").

In *Costello v. United States*, 350 U.S. 359 (1956), the defendant sought to challenge the indictment because the evidence before the grand jury was exclusively hearsay. The Court

turned away this effort to obtain review of grand jury decision-making. "If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed." *Id.* at 363.

*Costello* did not close off an attack on the indictment based on prosecutorial misconduct. In *United States v. Williams*, 504 U.S. 36 (1992), the Court addressed that issue head-on. As here, the defense accused the prosecution of failing to place exculpatory evidence before the grand jury. The trial court ordered disclosure of relevant portions of the grand jury transcripts and ultimately dismissed the indictment.

The Supreme Court disagreed and limited the ability of the federal courts to review the work of the grand jury. "[A]ny power federal courts may have to fashion, of their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings." *Id.* at 50. Turning to the issues in the *Williams* case itself, the Court rejected the claim that the prosecution was obliged to present exculpatory evidence to the grand jury. That is the purpose served by a trial. "If a 'balanced' assessment of the entire matter is the objective, surely the first thing to be done—rather than requiring the prosecutor say what he knows in defense of the target of the investigation—is to entitle the target to tender his own defense." *Id.* at 52.

The request in this case is very similar to that in *Williams*. The defense suspects that the prosecution described Mr. Carman as a killer without advising the grand jurors that there were other suspects or stating that he had not been charged or convicted of either murder. The defense describes the two murders as "uncharged conduct" and seeks a ruling that the court may review the prosecution's conduct. This scrutiny of the prosecution's presentation to the grand jury is an example of the type of inquiry the *Williams* decision warned against.

6

There are limits to the evidence that may be placed before the grand jury. Knowing use of perjured testimony or a statement obtained through torture come to mind as candidates. *See United States v. Ciambrone*, 601 F.2d 616, 623 (2d Cir. 1979) (prosecutors presenting to a grand jury must not engage in "fundamentally unfair tactics" such as by offering known perjurious testimony). But there is no suggestion here of prosecutorial misconduct—just of a one-sided presentation of inculpatory evidence. At most the defense has voiced its suspicion that the prosecution omitted any reference to the absence of a prior conviction of Mr. Carman or the possibility that another person may have had a motive and opportunity to kill Mr. Chakalos. Even if true, the failure to introduce such inculpatory evidence – or to discuss it in summing up statements before the grand jury – would not provide a sufficient basis for dismissal of the indictment.

The court DENIES the motion for partial disclosure of grand jury minutes (Doc. 62).

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 16th day of February, 2023.

Geoffrey W. Crawford, Chief Judge
United States District Court