UNTIED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 5:22-CR-00049 (GWC) |
| | : | |
| v. | : | |
| | : | |
| NATHAN CARMAN | : | MARCH 21, 2023 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATHAN CARMAN'S MOTION FOR DISCLOSURE OF *GIGLIO* MATERIAL**

The disclosure of impeachment evidence from the government to the defendant is an important and necessary component of the constitutional guarantee of a fair trial. To protect his constitutional right to a fair trial, Defendant, Nathan Carman, respectfully moves this Court for an order requiring the Government to produce all impeachment evidence in its possession, custody, or control pursuant to *Giglio v. United States*, 405 U.S. 150 (1972) and D. Vt. Local R. Crim. P. 16(d)(1). For the reasons detailed below, the Court should grant Mr. Carman's motion.

**I.   BACKGROUND**

On May 2, 2022, a federal grand jury sitting in the District of Vermont returned an eight-count indictment (the "Indictment"), charging Mr. Carman with mail fraud in violation of 18 U.S.C. § 1341 (Counts One through Three), wire fraud in violation of 18 U.S.C. § 1343 (Counts Four through Six, and Count Eight), and murder in violation of 18 U.S.C. § 1111 (Count Seven). The Indictment stems from the Government's allegations that Mr. Carman murdered his mother, Linda Carman, by sinking the boat aboard which he and Linda Carman were in September 2016. (Indictment at ¶¶ 18, 27.) The Government has stated that its "case centers primarily around the murder of Linda Carman." (Tr. Hr'g on Def.'s Mot. to Vac. Order of Detention (Doc. No. 39) at 9:7–10.)

1

Mr. Carman was arraigned on May 11, 2022, during which the Court ordered Mr. Carman detained.  (*See* Doc. No. 10.)  Additionally, following a detention hearing on May 16, 2022, the Court issued an order of detention as to Mr. Carman.  (*See* Doc. No. 19.)  On July 6, 2022, Mr. Carman filed a motion to vacate the Order of Detention and, on August 2, 2022, the Court held a hearing during which it denied Mr. Carman's motion.  (*See* Doc. Nos. 27, 35.)

In the Indictment, the Government alleges that Mr. Carman devised a scheme to defraud the estate of his grandfather, John Chakalos.  (*See* Indictment at ¶ 7.)  As part of the alleged scheme, the Government asserts in conclusory fashion that Mr. Carman "murdered John Chakalos and Linda Carman" and that Mr. Carman "murdered his grandfather, John Chakalos, shooting him twice with the Sig Sauer while Chakalos slept in his Windsor, CT home." (*Id.* at ¶¶ 7, 10.)  As this Court noted previously, however, the murder of Mr. Chakalos "has not been solved, at least to the satisfaction of the Connecticut authorities."  (Doc. No. 39 at 50:24–51:1.)  Despite the fact that Mr. Carman was never arrested, charged, or convicted for the death of Mr. Chakalos, the Government "alleges that the killing [of Mr. Chakalos] was part of the defendant's fraudulent scheme." (*Id.* at 8:11–12.)

The Government claims that Mr. Carman "misrepresented his involvement in and responsibility for" the deaths of his grandfather and mother "to law enforcement, to his family, to others who made inquiries about the deaths and their circumstances, and to others who challenged his cover-up or challenged his rights to his grandfather's assets."  (Indictment at ¶ 7.)  It further avers that Mr. Carman "falsely denied his involvement in the murder" of Mr. Chakalos, "misrepresented his whereabouts between approximately 3:00 a.m. on December 20, 2013, when he left his apartment in Bloomfield, and approximately 4:00 a.m., when he arrived at the location

where he planned to meet his mother to take a charter fishing trip[,]" and "falsely denied purchasing the Sig Sauer in November 2013." (*Id.* at ¶ 12.)

## II. LEGAL STANDARD

"It is well established that the prosecution has an obligation under the Due Process Clause to disclose to the defendant material exculpatory and impeaching evidence." *United States v. Stillwell*, 986 F.3d 196, 199–200 (2d Cir. 2021). Indeed, the government "has an affirmative duty to disclose favorable evidence known to it, even if no specific disclosure request is made by the defense." *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995). "[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1967). "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Giglio*, 405 U.S. at 154 (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). For these purposes, a "witness" includes a hearsay declarant whose out-of-court statement the government seeks to introduce and who is subject to impeachment pursuant to Fed. R. Evid. 806. *See United States v. Jackson*, 345 F.3d 59, 70–71 (2d Cir. 2003).

The District of Vermont Local Rules of Criminal Procedure require disclosure of *Giglio* material "not less than 14 days prior to the start of jury selection[,]" "unless the court orders otherwise for good cause." D. Vt. Local R. Crim. P. 16(d)(1).[1]

---

[1] On March 20, 2023, pursuant to D. Vt. Local R. Crim. P. 16(f), counsel for Mr. Carman and for the Government met and conferred telephonically regarding this motion. During the call, counsel for the parties agreed to work cooperatively pursuant to this motion and informally to ensure the disclosure of all *Giglio* material sooner than the 14-day timeframe referenced in Local Rule 16(d)(1).

**III.     ARGUMENT**

Mr. Carman is facing an eight-count indictment, premised on charged and uncharged conduct, which includes allegations arising from extensive investigations and civil litigation. The prosecution most certainly includes numerous witness statements, and the prosecution team is comprised of numerous local, state, and federal agencies. The Court should order the Government to disclose any and all impeachment evidence so that Mr. Carman can assess its usefulness and prepare his defense to the charges brought in the Indictment.

There have been extensive investigations leading up to the charges against Mr. Carman – investigations that continue to this day. These investigations include the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, and Firearms, the Connecticut State Police, the Windsor, Connecticut Police Department, the United States Coast Guard, and others. These investigations also include numerous witness statements and statements and/or reports, as well as emails, from the numerous government agencies and private individuals involved. The government must seek all impeachment evidence, from all the members of the prosecution team, which includes all federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against Mr. Carman. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *see also* United States Dep't of Justice, *Justice Manual*, § 9-5.001(B)(2).

A fair and constitutional trial necessarily involves examination of "relevant exculpatory or impeachment information that is significantly probative of the issues before the court but that may not, on its own, result in acquittal, or as is often colloquially expressed, make the difference between guilt and innocence." *Id.* at § 9-5.001(C). Disclosure pursuant to *Giglio* requires prosecutors to "disclose information that either casts substantial doubt upon the accuracy of any

4

evidence—including but not limited to witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence." *Id.* at § 9-5.001(C)(2); *see also Kyles*, 514 U.S. at 419; *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999). Indeed, it is the policy of the Department of Justice that prosecutors will **exceed** their constitutional obligations in making disclosures under *Giglio*. Justice Manual at § 9-5.001(C). Such information that the Government must disclose includes but is not limited to the following: variations in witness statements; prior inconsistent statements (including inconsistent attorney proffers), whether sworn or unsworn; witness assistance in any federal, state, or local criminal proceeding; non-prosecution agreements; immunity agreements; plea agreements between witnesses and the government; prior acts under Fed. R. Evid. 608; prior convictions under Fed. R. Evid. 609; and known substance abuse, mental health, or other issues that could affect a witness's ability to perceive and/or recall events.

In this complex case, with trial scheduled to begin on October 10, 2023, and anticipated to last no less than three weeks, the Court should direct the Government to make a complete disclosure, which includes specific identification of all *Giglio* material among the discovery it has produced and has yet to produce. The specific disclosure of *Giglio* material at this point will insure that Mr. Carman is able to thoroughly and adequately assess the usefulness of such information and, therefore, protect Mr. Carman's constitutional right to a fair trial.

**IV.      CONCLUSION**

As case law and the policies of the Department of Justice require, impeachment evidence covers a broad category of information that is in the possession, custody, and control of the entire prosecution team. Given the overwhelming amount of information involved in this case, a Court order requiring the Government to sufficiently disclose any and all impeachment evidence

5

pursuant to *Giglio v. United States* in the near term is necessary to insure the protection of Mr. Carman's right to a fair trial. Accordingly, the Court should grant Mr. Carman's Motion for Disclosure of *Giglio* Material.

Dated: March 21, 2023
       Hartford, Connecticut

Respectfully submitted,

DEFENDANT
NATHAN CARMAN

By: /s/ *David X. Sullivan*
David X. Sullivan, Esq. (*Pro Hac Vice*)
dsullivan@mccarter.com
McCARTER & ENGLISH, LLP
CityPlace I, 36th Floor
185 Asylum Street
Hartford, CT 06103
Phone: (860) 275-6700
Fax: (860) 724-3397

/s/ *Martin J. Minnella*
Martin J. Minnella, Esq. (*Pro Hac Vice*)
pcrean@mtelawfirm.com
MINNELLA, TRAMUTA, & EDWARDS, LLC
40 Middlebury Road
Middlebury, CT 06762
Phone: (203) 573-1411
Fax: (203) 757-9313

/s/ *Robert W. Katims*
Robert W. Katims, Esq.
rkatims@hoffcurtis.com
HOFF CURTIS
60 Main Street
Burlington, VT 05401
Phone: (802) 864-6400

**CERTIFICATION**

      I hereby certify that on this date a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

                                            /s/ *David X. Sullivan*
                                            David X. Sullivan (*Pro Hac Vice*)