UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Docket No. 5:22-CR-49 |
| ) | |
| NATHAN CARMAN, ) | |
|     Defendant. ) | |

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S MOTIONS FOR DISCLOSURE OF BRADY AND GIGLIO MATERIALS**

Defendant Nathan Carman has filed two motions seeking the disclosure and "specific identification" of Brady and Giglio materials. Docs. 75, 76. The government has abided by its Brady obligations and agrees to provide the defendant with Giglio materials sooner than the fourteen-day timeframe set by Local Rule 16(d)(1). For the reasons set forth below, the government opposes the defendant's request for "specific identification" of Brady and Giglio materials. Carman's motion for disclosure should be denied as moot.

I.  Background

In January of 2017, the insurer of Carman's boat – *Chicken Pox* – filed a complaint for declaratory judgment in the United States District Court for the District of Rhode Island in connection with an insurance claim filed by Carman. Then, in July of 2017, Carman's aunts filed a "slayer petition" in New Hampshire Probate Court seeking to prevent Carman from unjustly receiving funds from the estate of his grandfather, and alleging that Carman killed both his grandfather and his mother. In May of 2019, the slayer petition was dismissed on venue grounds. Thereafter, in August of 2019, a bench trial was held in connection with the insurance litigation. In November of 2019, the Court ruled in favor of the insurance company. Carman initially appeared *pro se* in connection with the litigation but eventually retained counsel.

1

Throughout nearly three years of litigation, Carman received voluminous discovery in these parallel civil actions. Additionally, dozens of depositions were held during which Carman was able to cross-examine witnesses. During the Rhode Island trial he again had the opportunity to cross-examine witnesses. The discovery and witnesses in these parallel civil cases have noteworthy overlap with the instant case.

On May 2, 2022, a federal grand jury sitting in Rutland, Vermont, returned a sealed indictment (the "indictment") charging Carman with three counts of mail fraud, in violation of 18 U.S.C. § 1341; four counts of wire fraud, in violation of 18 U.S.C. § 1343; and murder on the high seas, in violation of 18 U.S.C. § 1111. The indictment alleges, among other things, a scheme by Carman in which he sought to defraud the estate of his grandfather, John Chakalos, its executor, the Chakalos Family Dynasty Trust, and its trustees. The indictment further alleges that as a central part of this scheme, Carman murdered both his grandfather and his mother, Linda Carman.

On May 11, 2022, the Court issued a criminal pretrial order in which it ordered the government to make available to the defendant for inspection and copying "[a]ll information and material known to the government which may be favorable to the defendant on the issues of guilt or punishment, within the scope of Brady v. Maryland, 373 U.S. 83 (1963)." Doc. 11. The same day, the Court also entered an order pursuant to Federal Rule of Criminal Procedure 5(f) confirming the government's disclosure obligations under Brady v. Maryland. Doc. 12. A jury trial is scheduled to commence on October 10, 2023.

II.   Discovery

Shortly after Carman's arrest in May of 2022, the government began producing comprehensive discovery to his counsel – at the time, the Office of the Federal Public Defender.

2

A substantial portion of this discovery had been previously produced to Carman in connection with his prior civil cases. As a result, Carman received much of the discovery the government has produced several years before his arrest. Carman in fact received these materials several years before they were even obtained by the United States Attorney's Office for the District of Vermont. The government has generously produced discovery to Carman far earlier than required, even offering access to grand jury materials more than eight months before trial.

While it is true that the discovery produced to Carman in aggregate is substantial, the discovery unrelated to the prior civil cases is manageable in scope – particularly for a defendant represented by three attorneys – and is relatively unremarkable for a federal criminal case. The government has provided discovery to Carman electronically, allowing him to easily search the material for particular data or documents. The government also provided Carman with detailed indexes of the discovery material, giving him an additional means of identifying specific documents. Furthermore, in late May of 2022, the government met with Carman's counsel for a Rule 16.1 discovery conference. The government provided Carman's counsel with an overview of the discovery in the case, discussed the trajectory of the case more broadly, and answered questions from Carman's counsel.

In October of 2022, Carman retained new counsel. The government re-produced discovery to Carman's new counsel – again in a searchable, electronic format accompanied by indexes – and helped Carman's new counsel address technical difficulties. In October of 2022, the government offered to meet with Carman's new counsel for a second Rule 16.1 discovery conference. On several subsequent occasions, as recently as January of 2023 and again in March of 2023, the government reiterated its willingness to meet with Carman's new counsel to provide

an overview of discovery in the case and answer questions, but Carman's new counsel has not pursued such meetings.

III.    Carman's Motions

Carman's motions seek not only the production of Brady and Giglio materials, but also the "specific identification" of these materials within the discovery produced by the government. While Carman captions his motion as a request for "disclosure," as a practical matter he asks the Court to order the government to conduct a review of the materials it has already disclosed for Brady information and provide the results of that review to him. Carman cites no authority supporting this request or the proposition that the government must specifically identify Brady and Giglio materials within the discovery it produces.

IV.    Relevant Law and Analysis

"As a general rule," the Government does not have an affirmative duty to identify "exculpatory evidence within a larger mass of disclosed evidence." United States v. Skilling, 554 F.3d 529 (5th Cir. 2009), vacated in part on other grounds, 561 U.S. 358 (2010) (government not required to "scour[ ] the open file in search of exculpatory information" because "the government was in no better position to locate any potentially exculpatory evidence than was [the defendant]"). All courts of appeal to have considered this issue have followed this general rule. See, e.g., United States v. Yi, 791 F. App'x 437, 438-39 (4th Cir.), cert. denied, 140 S. Ct. 2542 (2020) (unpublished) (noting that "fulfillment of the Government's obligation under Brady [does not require] it to identify exculpatory material"); Skilling, 554 F.3d at 576-77 (finding the defendant's contention that the Government's voluminous discovery "resulted in the effective concealment of a huge quantity of exculpatory evidence" to be unpersuasive); Rhoades v. Henry, 638 F.3d 1027, 1039 (9th Cir. 2011) ("Rhoades points to no authority requiring the prosecution

to single out a particular segment of a videotape [produced in discovery], and we decline to impose one"); United States v. Warshak, 631 F.3d 266, 297 (6th Cir. 2010)  (rejecting the defendant's argument that "the Government was obliged to sift fastidiously through the evidence ... in an attempt to locate anything favorable to the defense"); United States v. Pelullo, 399 F.3d 197, 212 (3d Cir. 2005) ("Brady and its progeny permit the Government to make information within its control available for inspection by the defense, and impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed.").

    Numerous district courts have held the same.  See, e.g., United States v. Fenner, 1:18-cr-00333-RLY-DML, Doc. 105 (S.D. Ind. Apr. 9, 2020) (denying defense motion based on Skilling in complex, document-intensive fraud case, in part, because "[t]he government has already produced extensive discovery…"); United States v. Ellis, 2020 WL 3962288, at *2 (D.N.J. July 13, 2020) (rejecting defendant's argument that government had "affirmative obligation to find exculpatory material" among disclosed discovery, and concluding the government "satisfied its disclosure obligation under Brady and has gone further than the requirements of [Rule 16]" by organizing the discovery, providing an index and Bates stamps, providing records in the same format as received from third parties, and "provid[ing], where possible, electronic records in a searchable format"); United States v. Parks, 2019 WL 4979838, at *3 (N.D. Okla. Oct. 8, 2019) (denying motion to compel government to "identify potentially exculpatory evidence that is included in the discovery materials" because, "defendants have not shown that Brady or Giglio requires more than the production of potentially exculpatory evidence.").

    Nonetheless, the Skilling court specifically recognized three circumstances involving "bad faith" that may justify a court ordering the Government to identify exculpatory material

within a voluminous discovery production. 554 F.3d at 577; see also United States v. Warshak, 631 F.3d 266, 297-98 (6th Cir. 2010) (adopting Skilling's bad faith approach). Such circumstances include (1) the Government "'padd[ing]' an open file with pointless or superfluous information to frustrate a defendant's review," (2) "[c]reating a voluminous file that is unduly onerous to access," and (3) hiding Brady material "in the open file with the hope that [the defendant] would never find it." Skilling, 554 F.3d at 577; see also United States v. Thomas, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) ("[T]he Government cannot hide Brady material as an exculpatory needle in a haystack of discovery materials.") Some courts have limited orders for identification of Brady materials to materials the government "knows of." United States v. Hsia, 24 F.Supp.2d 14, 29-30 (D.D.C. 1998); United States v. Blankenship, 2015 WL 3687864, *6 (S.D.W.V. June 12, 2015) ("the [government] should specifically designate any *known* Brady material as such and disclose the same to defense counsel") (*emphasis added*).

None of the circumstances identified in Skilling are present here, and Carman's motion makes no claim of bad faith. The government has already disclosed nearly all of the evidenced it has received. It has already provided all material that could conceivably be viewed as Brady material and has further provided a significant amount of early Giglio material. The government has also agreed to provide any additional impeachment evidence well in advance of trial. The government has produced discovery to Carman earlier than required in a searchable, electronic format accompanied by indexes and has helped Carman's new counsel address technical difficulties. Moreover, the government met with Carman's prior counsel to provide an overview of discovery in the case and answer questions and has repeatedly offered to meet with Carman's new counsel for the same purpose, but Carman's new counsel has not pursued such meetings.

Importantly, Carman is undoubtedly in a better position than the government to identify materials that he believes fit his theories of defense – theories into which the government has little insight. Where the government has produced discovery in good faith, the Court's criminal pretrial order and Fed. R. Crim. P 5(f) are sufficient with respect to the government's Brady obligations.

Several judges have imposed greater duties on the government. This Court should decline to follow the decisions in these cases, which in any event are distinguishable. In one instance the government was ordered to identify Brady materials for a detained defendant with a small defense team, where "[t]here [was] no parallel civil litigation." United States v. Saffarinia, 424 F. Supp. 3d 46 (D.D.C. 2020), citing United States v. Salyer, 2010 WL 3036444 (E.D.C.A. Aug. 2, 2010). Unlike Saffarinia, where the defendant's counsel was "'handling [the] matter *pro bono*' with 'time constraints' and 'limited financial resources,'" Carman has retained three attorneys to represent him, in addition to several associates who have worked on his case. With more than six months remaining before trial, there is more than adequate time for Carman's sizeable defense team to complete its review of discovery. Saffarinia is also distinguishable because the Court based its decision in part on the fact that the defendant did "not have the advantage of information and documents from prior litigation or parallel civil litigation." Here, Carman previously received information and documents in connection with two separate but parallel civil cases during which he was represented by counsel. As noted above, Carman was provided with much of this discovery years before the government obtained it.

V.   Conclusion

The government has abided by its Brady obligations and agrees to provide the defendant with Giglio materials sooner than the fourteen-day timeframe set by Local Rule 16(d)(1). For

the reasons set forth below, the government respectfully asks the Court to deny Carman's motion for disclosure as moot.

Dated at Burlington, in the District of Vermont, this 4th day of April, 2023.

                                                Respectfully submitted,

                                                UNITED STATES OF AMERICA

                                                NIKOLAS P. KEREST
                                                United States Attorney

By:    /s/ *Nathanael T. Burris*
        NATHANAEL T. BURRIS
        PAUL J. VAN DE GRAAF
        Assistant United States Attorneys
        P.O. Box 570
        Burlington, VT 05402-0570
        (802) 951-6725